IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WILLIAM A. CORNELIO, III, #A0192661, | ) ) ) | CIV. NO. 12-00072 DAE/RLP |
| Plaintiff, | ) ) | ORDER DISMISSING COMPLAINT WITH LEAVE GRANTED TO AMEND |
| vs. | ) ) ) | |
| JAMES HIRANO, JOHN DOES 1-7, JANE DOES 1-3, STATE OF HAWAII, | ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

**ORDER DISMISSING COMPLAINT WITH LEAVE GRANTED TO AMEND**

Before the court is *pro se* Plaintiff William A. Cornelio, III's, prisoner civil rights complaint.[1]  Although Plaintiff is now incarcerated at the Halawa Correctional Facility ("HCF"), Plaintiff complains of actions that occurred while he was housed at the Maui Community Correctional Center ("MCCC"). The complaint names MCCC Warden James Hirano, Lieutenant Labasan, Lieutenant Fujimoto, Lieutenant John Doe #3, Sergeant Abac, Sergeant Caravalho, Adult Correctional Officer ("ACO") Pinto, ACO Blue, Sergeant Rabanes, ACO Jane Doe #2, MCCC Nurse Nancy, and the State of Hawaii (collectively, "Defendants"),[2] in their individual and official capacities.  Plaintiff claims that

_____

[1] Plaintiff is proceeding *in forma pauperis*.  *See* ECF #8.

[2] Plaintiff names Labasan, Fujimoto, Abac, Caravalho, Pinto, Blue, Rabanes, and Nurse Nancy as John and Jane Does. Because he identifies them by their first or last name and title, however, the court refers to them as identified.

Defendants violated his constitutional rights to due process and protection from harm while he was incarcerated at MCCC.

The Complaint is DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915(A)(b)(1), for failure to state a claim. Plaintiff is granted leave to amend, as discussed and limited below.

## I. STATUTORY SCREENING

The court must screen all civil actions brought by prisoners that relate to prison conditions and/or seek redress from a governmental entity, officer, or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint in full or in part if its claims are legally frivolous or malicious, fail to state a claim on which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A(b); 42 U.S.C. § 1997e (c)(1).

A complaint may be dismissed for failure to state a claim for (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned,

2

the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, ----, 129 S. Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.  Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct.  *Id.* at 1951.

The court must construe a *pro se* complaint liberally, accept all allegations of material fact as true, and construe those facts in the light most favorable to the plaintiff. *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000).  Leave to amend should be granted if it appears at all possible that the

3

plaintiff can correct the defects of his or her complaint.  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

## II.  <u>PLAINTIFF'S CLAIMS</u>

Plaintiff states that, on December 6, 2011, he was charged with misconduct at MCCC for unauthorized contact with another prisoner, Ashley Akana.  Plaintiff was given notice of the charges and a hearing was scheduled for December 15, 2011. At the hearing, Plaintiff sought to confront Defendant Jane Doe #2, who was the charging officer.  Plaintiff alleges that Jane Doe #2's misconduct report stated that Akana admitted that she was speaking with Plaintiff, not that Plaintiff was talking to her.  *See* ECF #1, Compl. at 12.  Plaintiff claims this shows he is not guilty of unauthorized contact with another inmate.  His request to question Jane Doe #2 and other witnesses was denied. On December 16, 2011, the Adjustment Committee, including Lieutenant Fujimoto and Sergeant Caravalho, found Plaintiff guilty and sanctioned him to "los[s] of all priv[i]leges from 12/17 to 12/31."  ECF #1, Compl. at 10.  Plaintiff grieved this decision, but says he received no response.

Plaintiff says that, on December 31, 2011, Defendants housed him at Module A, with inmate Ashley Akana's husband, Noah Borgman.  Plaintiff alleges that Defendants made this new housing assignment in hopes of provoking a confrontation between Plaintiff and Borgman.  That same day, Borgman allegedly

4

assaulted Plaintiff.  Plaintiff says he sustained a broken nose
and concussion from the assault.  Plaintiff was charged with
fighting; it is unclear if Borgman was similarly charged.
Plaintiff was given notice of the charges on January 1, 2012, and
a hearing was held the next day, January 2, 2012.  Plaintiff
complains that Committee Chair Fujimoto had predetermined that
Plaintiff was guilty of fighting with Borgman.  Plaintiff says he
asked to "confront and cross examine his accuser," but was
denied.  ECF #1, Compl. at 11.  Plaintiff was found guilty and
sanctioned to thirty days "lockdown," in segregation.  He claims
there was "no evidence relied upon for [this] decision." *Id.*
Plaintiff grieved this decision and says that he has never
received a response.

Plaintiff alleges that because of the two misconduct
reports his scheduled work furlough program was cancelled,
delaying his early release.  Plaintiff seeks expungement of the
misconduct reports and damages.

### III.  <u>DISCUSSION</u>

"To sustain an action under section 1983, a plaintiff
must show '(1) that the conduct complained of was committed by a
person acting under color of state law; and (2) that the conduct
deprived the plaintiff of a federal constitutional or statutory
right.'" *Hydrick v. Hunter*, 500 F.3d 978, 987 (9th Cir. 2007)
(citation omitted), *vacated and remanded on other grounds*, 129 S.

Ct. 2431 (2009); *see also West v. Atkins*, 487 U.S. 42, 48 (1988); 42 U.S.C. § 1983.

## A.    Rule 8

Rule 8 of the Federal Rules of Civil Procedure requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although the Federal Rules adopt a flexible pleading policy, a complaint must give fair notice and state the elements of the claim plainly and succinctly. *Jones v. Cmty. Redev. Agency of City of L.A.*, 733 F.2d 646, 649 (9th Cir. 1984). "All that is required [by Fed. R. Civ. P. 8(a)] is that the complaint gives 'the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests.'" *Kimes v. Stone*, 84 F.3d 1121, 1129 (9th Cir. 1996) (quoting *Datagate, Inc. v. Hewlett-Packard Co.*, 941 F.2d 864, 870 (9th Cir. 1991)).

Plaintiff's claims fail to plainly and succinctly state which Defendants are responsible for which of his claimed constitutional violations. Plaintiff makes generalized claims regarding alleged constitutional violations but fails to set forth specific factual allegations linking each named Defendant to an action that violated Plaintiff's constitutional rights.

"A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d

6

1193, 1194 (9th Cir. 1998).  A person deprives another of a
constitutional right under § 1983, when he or she "'does an
affirmative act, participates in another's affirmative acts, or
omits to perform an act which [that person] is legally required
to do that causes the deprivation of which complaint is made.'"
*Preschooler II v. Clark County Sch. Bd. of Trustees*, 479 F.3d
1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d
740, 743 (9th Cir. 1978)).  The "requisite causal connection may
be established" not only by some kind of direct personal
participation in the deprivation, but also by setting in motion
"a series of acts by others which the actor knows or reasonably
should know would cause others to inflict the constitutional
injury."  *Id.* (citing *Johnson*, 588 F.2d at 743–44).

        Plaintiff names thirteen defendants, but fails to
explain which Defendants allegedly falsely charged him with
misconduct, which Defendants, other than Fujimoto and Caravalho,
were members of the two Adjustment Committees who allegedly
denied him due process, which Defendants were personally
responsible for allegedly making the decision to house him with
inmate Borgman with deliberate indifference to Plaintiff's
safety, and which Defendants were present during the actual fight
or assault, and failed to protect Plaintiff from harm.  Moreover,
as discussed more fully below, Plaintiff's statement of facts
does not support a violation of due process.

In addition, Plaintiff names Nurse Nancy, but fails to link her to his claims or explain her connection to his action. Plaintiff alleges no facts suggesting that she or any other Defendant denied him medical care.   Rather, Plaintiff admits that he was put under medical observation for three days.   It is unlikely that Nurse Nancy had authority to make inmate housing decisions, charge an inmate with a disciplinary infraction, or participate in prison disciplinary hearings, which form the basis for his claims.   As such, the court cannot infer that Nurse Nancy caused Plaintiff harm from the facts he alleges.

Plaintiff broadly states a claim for deliberate indifference to a known threat to his safety by asserting that he was purposefully housed with an inmate that prison officials knew or should have known was a threat to him.   Plaintiff, however, supplies no supporting details to allow this court or Defendants to make the necessary leap to a plausible inference that one or all of the *named* Defendants are responsible for this claim.   *See Twombly*, 550 U.S. at 570.   Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and this is all Plaintiff provides here, at least insofar as he alleges a threat to safety or denial of medical care.   *See Iqbal*, 129 S. Ct. at 1949.   Plaintiff's Complaint therefore fails to state a claim for relief and is DISMISSED with leave granted to amend, as further analyzed below.

**B.    Eleventh Amendment Immunity**

Plaintiff names the State of Hawaii and all Defendants in their official capacities.  In *Will v. Michigan Dept. of State Police*, 491 U.S. 58, (1989), the Supreme Court held that states, state agencies, and state officials sued in their official capacities are not persons subject to civil rights suits under 42 U.S.C. § 1983.  491 U.S. at 664-66.  Further, the Eleventh Amendment prohibits federal jurisdiction over suits against the state or a state agency unless the state or agency consents to the suit.  *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 53 (1996); *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 100 (1984); *Quern v. Jordan*, 440 U.S. 332, 342 (1979).  State officers acting in their official capacities receive the same immunity as the government agency that employs them.  *Hafer v. Melo*, 502 U.S. 21 (1991).

Thus, the Eleventh Amendment bars Plaintiff's claims against the State and his damages claims against Defendants in their official capacities.  *See Doe v. Lawrence Livermore Natl. Lab.*, 131 F.3d 836, 839 (9th Cir. 1997); *Eaglesmith v. Ward*, 73 F.3d 857, 859 (9th Cir. 1996); *Pena v. Gardner*, 976 F.2d 469, 472 (1992).  The State of Hawaii and damages claims against Defendants in their official capacities are DISMISSED with prejudice.

//

### C.    Supervisory Liability

Because he does not detail their personal involvement in his claims, it appears that Plaintiff seeks to hold Defendants Hirano, Labasan, and Abac vicariously liable for his allegations. Plaintiff says that Warden Hirano is "in charge of the overall supervision, training, the hiring and firing of all . . . personell [sic] employed at MCCC[;]" Labasan is "immediate supervisor of all correctional personell [sic] during the night shift[;]" and Abac is the "immediate supervisor of all Module-A correctionel [sic] officers during the shift in question." ECF #1, Compl. at 2-3.  Plaintiff fails to further explain Hirano's, Labasan's, or Abac's connection to his claims.

"A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'"  *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011), (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)); *see also Iqbal*, 129 S. Ct. at 1948.  Thus, a supervisor is liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  The Supreme Court has rejected the notion that a supervisory defendant can be liable based on knowledge and

acquiescence in a subordinate's unconstitutional conduct because government officials, regardless of their title, can only be held liable under § 1983 for his or her own conduct and not the conduct of others. *See Iqbal*, 129 S. Ct. at 1949. Supervisors are therefore not subject to vicarious liability under a theory of *respondeat superior*, but are liable only for their own conduct. *Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir. 2001).

When a defendant holds a supervisory position, the causal link between that defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). A plaintiff must allege: (1) that the defendant's "own culpable action or inaction in the training, supervision, or control of his subordinates" caused the constitutional injury; (2) that he acquiesce[d] in the constitutional deprivations of which [the] complaint is made;" or (3) that their conduct showed a "reckless or callous indifference to the rights of others." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

Other than setting forth their supervisory positions at MCCC, Plaintiff alleges nothing showing that Hirano, Labasan, and

Abac were personally responsible or in any way involved in his claims.  An individual's "general responsibility for supervising the operations of a prison is insufficient to establish personal involvement." *Ouzts v. Cummins*, 825 F.2d 1276, 1277 (8th Cir. 1987).  Plaintiff fails to state a claim against Defendants Hirano, Labasan, and Abac and claims against them are DISMISSED.

**D.   Due Process**

Plaintiff claims that Defendants denied him due process when they allegedly failed to comply with Department of Public Safety policies and procedures at two disciplinary hearings. Defendants Fujimoto and Caravalho sustained Plaintiff's first disciplinary charge, for unauthorized contact with inmate Ashley Akana, and sanctioned him with a two week loss of unidentified privileges.[3]  Fujimoto and Caravalho sustained Plaintiff's second charge, for allegedly fighting with Akana's husband, inmate Borgman, and sanctioned him to thirty days segregation.[4] Plaintiff complains that Defendants denied him the right to call witnesses at both proceedings and that there was "no evidence" supporting the second charge.  Compl. at 11.  Plaintiff claims he

---

[3] Plaintiff says he was charged with "8(19)," referencing DPS Policy Cor.13.03.4.4a.8(19), "unauthorized contacts with the public or other inmates," considered a moderate misconduct.

[4] Plaintiff says he was charged with "7(1)," referencing DPS Policy Cor.13.03.4.3a.7(1), "fighting with another person," considered a high misconduct.

has been removed from his work-furlough program "for an unknown amount of time." Compl. at 12.

Plaintiff also suggests that Sergeant Rabanes denied him due process by failing to respond to his grievances, although this claim is not specific in the Complaint. *See id.* at 5.

1.   **The Disciplinary Hearings**

The Due Process Clause protects prisoners from the deprivation of liberty without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). To state a due process claim, a plaintiff must first establish the existence of a liberty interest. Liberty interests may arise from the Due Process Clause itself or from state law. *Hewitt v. Helms*, 459 U.S. 460, 466-68 (1983). Inmates' liberty interests are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (internal citations omitted). "As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and does not otherwise violate the Constitution, the Due Process Clause does not in itself subject an inmate's treatment

by prison authorities to judicial oversight." *Montanye v. Haymes*, 427 U.S. 236, 242 (1976).

Thus, a prisoner may challenge a disciplinary action that (1) deprives or restrains a liberty interest in some "unexpected manner," directly under the Due Process Clause, or (2) "imposes some 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (citing *Sandin*, 515 U.S. at 483-84)).

Plaintiff has no constitutional right to participate in a work furlough program. *See Toussaint v. McCarthy*, 801 F.2d 1080, 1094-95 (9th Cir. 1986) (holding that, under the pre-*Sandin* mandatory language framework, inmates have no constitutional right to participate in prison work programs); *Baumann v. Arizona Dep't of Corr.*, 754 F.2d 841, 846 (9th Cir. 1985); *cf., Coakley v. Murphy*, 884 F.2d 1218, 1221 (9th Cir. 1989) (no liberty interest based on a transfer from work release center back to prison). Nor does he have a right to early release. *See Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7-11 (1979); *see also Neal v. Shimoda*, 905 F. Supp. 813, 818 (D. Haw. 1995), *aff'd in part rev'd in part*, 131 F.3d 818 (9th Cir. 1997) (no state created liberty interest in Hawaii to early release). Thus, Plaintiff's ineligibility for the work furlough program and consequent ineligibility for early release does not

extend his confinement in an unexpected manner or entitle him to protections under the Due Process Clause itself.

Turning to whether Plaintiff is entitled to due process protections based on a state-created liberty interest, the court notes that typically, placement in segregated housing does not implicate a protected liberty interest. *See Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003); *Hewitt*, 459 U.S. at 466-68 (holding that the Due Process Clause does not confer a liberty interest in being confined in the general prison population). This is because placement in segregation falls within the terms of confinement ordinarily contemplated when a prison sentence is imposed, and so normally "comport[s] with the prison's discretionary authority." *Toussaint*, 801 at 1091-92.

To determine whether Plaintiff's segregation imposed atypical and significant hardships the court must consider: (1) the conditions of confinement in segregation; (2) the duration of the condition and the degree of restraint imposed; and (3) whether the sanction will affect the duration of the prisoner's sentence. *Ramirez*, 334 F.3d at 861; *Keenan v. Hall*, 83 F.3d 1083, 1088-89 (9th Cir. 1996). "Atypicality" requires not merely an empirical comparison, but turns on the importance of the right taken away from the prisoner. *See Carlo v. City of Chino*, 105 F.3d 493, 499 (9th Cir. 1997).

15

First, Plaintiff does not allege that his sentence was extended, or that the conditions of confinement in segregation imposed atypical or significant hardship in relation to the normal incidents of daily prison life.  Plaintiff provides no facts that support a finding of atypical or significant hardship.

Second, it is unlikely that Plaintiff's thirty-day segregation at MCCC, a medium to low security jail facility, imposed more severe conditions than segregation at HCF, Hawaii's maximum security prison, where the Supreme Court held that thirty days disciplinary segregation, which mirrored administrative segregation, did not impose atypical or significant hardship. *See Sandin*, 515 U.S. at 472, 484; *see e.g., Torres v. Fauver*, 292 F.3d 141, 151 (3d Cir. 2002) (four months in segregation is not atypical and significant); *Griffin v. Vaughn*, 112 F.3d 703, 706-08 (3d Cir. 1997) (fifteen months segregation is not atypical and significant); *Beverati v. Smith*, 120 F.3d 500, 504 (4th Cir. 1997) (six months of confinement in especially disgusting conditions that were "more burdensome than those imposed on the general prison population were not atypical . . . in relation to the ordinary incidents of prison life."); *Jones v. Baker*, 155 F.3d 810 (6th Cir. 1998) (two years in administrative segregation is not atypical and significant); *Jacks v. Crabtree*, 114 F.3d 983 (9th Cir. 1997) (denial of year sentence reduction is not an atypical and significant hardship).

16

Moreover, presuming there is a liberty interest, the procedural requirements for prison disciplinary hearings require: (1) at least 24 hours written notice of the charges before the hearing; (2) a written statement of the evidence relied on for the disciplinary action; (3) the right to call witnesses when doing so is not hazardous to institutional safety or goals; and (4) legal assistance for illiterate prisoners or if the issues are complex. *Wolff*, 418 U.S. at 563-71. However, "the requirements of due process are satisfied if 'some evidence' supports the decision of the hearing officer or the prison disciplinary board." *Superintendent v. Hill*, 472 U.S. 445, 455 (1985); *see also Touissaint*, 926 F.2d at 802-03 (9th Cir. 1991); *cf.*, *Burnsworth v. Gunderson*, 179 F.3d 771, 774-74 (9th Cir. 1999) (where there is no evidence of guilt it may be unnecessary to demonstrate existence of liberty interest). This standard is not particularly stringent and the relevant inquiry is whether "there is any evidence in the record that could support the conclusion reached. . . ." *Hill*, 472 U.S. at 455-56.

Plaintiff complains that he was denied witnesses and, at least for the second charge, there was no evidence to support the charges.[5] As to the first charge, Plaintiff admits that, although he did not speak to Akana, she spoke to him. He also

---

[5] Plaintiff does not say that he was not given a written statement detailing the evidence Defendants relied on to impose discipline.

says that Hirano told him that the inmates working with him when this happened "ratted him out."  ECF #1, Compl. at 9.  There was, therefore, some evidence in the record to support the charge of "unauthorized contact" with another inmate, regardless of whether Plaintiff responded to Akana when she spoke to him.

Similarly, Plaintiff admits that he was involved in an altercation with Borgman a week later, and that Plaintiff sustained injuries.  The fact that Plaintiff had been disciplined a week earlier for speaking with Borgman's wife, and required medical care after the incident with Borgman, clearly constitutes "some evidence in the record" to support a finding that Plaintiff was fighting with Borgman, even if the Adjustment Committee disbelieved Plaintiff's self-defense argument.

Because Plaintiff fails to state a claim for the deprivation of due process relating to the two disciplinary charges at issue, this claim is DISMISSED.

## 2. Grievance Procedures

Plaintiff suggests that Rabanes denied him due process when she allegedly failed to respond to his grievances. Rabanes's, or any unnamed Defendants alleged mishandling of Plaintiff's grievances is an insufficient basis on which to state a due process claim.  *See, e.g., Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (holding that a prisoner has no constitutional right to an effective grievance or appeal

procedure); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) ("[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates.")

Moreover, even if Rabanes or others denied Plaintiff's grievances, rather than failed to timely respond, this does not violate due process.  "Ruling against a prisoner on an administrative complaint does not cause or contribute to the [underlying] violation." *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) (holding that only persons who cause or participate in civil rights violations can be held responsible); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (holding that prison officials whose only roles involved the denial of the prisoner's administrative grievances cannot be held liable under § 1983); *Wright v. Shapirshteyn*, No. CV 1-06-0927-MHM, 2009 WL 361951, *3 (E.D. Cal. Feb.12, 2009) (noting that "where a defendant's only involvement in the allegedly unconstitutional conduct is the denial of administrative grievances, the failure to intervene on a prisoner's behalf to remedy alleged unconstitutional behavior does not amount to active unconstitutional behavior for purposes of § 1983"); *Velasquez v. Barrios*, No. 07cv1130-LAB (CAB), 2008 WL 4078766, *11 (S.D. Cal. Aug. 29, 2008) ("An official's involvement in reviewing a prisoner's grievances is an insufficient basis for relief through

a civil rights action."). Accordingly, Plaintiff's allegations are insufficient to state a claim against Rabanes or the other unnamed Defendants who participated in his grievance process.

## E.   Failure to Protect

Plaintiff alleges that Defendants purposely failed to protect him from inmate Borgman when they housed the two together in the same Module. Prison officials are required to take reasonable measures to guarantee the safety of inmates and have a duty to protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994); *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). To state a claim for threats to safety, an inmate must allege facts to support that he was incarcerated under conditions posing a substantial risk of harm and that prison officials were "deliberately indifferent" to his safety. *Farmer*, 511 U.S. at 834; Frost, 152 F.3d at 1128; *Redman v. County of Los Angeles*, 942 F.2d 1435, 1443 (9th Cir. 1991) (*en banc*).

Thus, a plaintiff must set forth facts supporting an inference that defendant knew of, but disregarded, an excessive risk to an inmate's safety. *Farmer*, 511 U.S. at 837. That is, "the official must both [have been] aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he must also [have] draw[n] the inference." *Farmer*, 511 U.S. at 837; *Frost*, 152 F.3d at 1128; *Redman*, 942

20

F.2d at 1442.  Plaintiff sufficiently alleges facts that support an inference that someone was deliberately indifferent to threats to his safety.  Plaintiff, however, fails to link any specific Defendant to this claim.

Plaintiff may be alleging that Defendant John Doe #3 is responsible for the decision to re-house him with Borgman, *see* Compl. at 3, but he provides no facts within his claim to support John Doe #3's deliberate indifference, that is, that John Doe was aware of and drew the inference of the threat.  Nor does Plaintiff name any guards who were present during the alleged assault or provide any facts showing that they failed to prevent or stop the fight or were otherwise deliberately indifferent to Plaintiff's safety.  As such, Plaintiff fails to state a claim.

## IV.  <u>LEAVE TO AMEND</u>

The Complaint is DISMISSED as discussed above. Plaintiff may file a proposed amended complaint on or before **April 11, 2012**.  The proposed amended complaint must cure the deficiencies noted above and demonstrate how the conditions complained of resulted in a deprivation of his federal constitutional or statutory rights.

The court will not refer to the original pleading to make any amended complaint complete.  Local Rule 10.3 requires that an amended complaint be complete in itself without reference to any prior pleading.  Defendants not named and claims not

realleged in an amended complaint are deemed waived.  *See King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987).   Furthermore, as a general rule, an amended complaint supersedes the original complaint.  *See Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967). In an amended complaint, each claim and the involvement of each Defendant must be sufficiently alleged.

### V.   28 U.S.C. § 1915(g)

If Plaintiff fails to file an amended complaint correcting the deficiencies identified in this Order, this dismissal may count as a "strike" under the "3-strikes" provision of 28 U.S.C. § 1915(g).  Under the 3-strikes provision, a prisoner may not bring a civil action or appeal a civil judgment *in forma pauperis* under 28 U.S.C. § 1915

> if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

### VI.   CONCLUSION

IT IS HEREBY ORDERED that:

(1)   The Complaint is DISMISSED for failure to state a claim, as discussed above.  *See* 28 U.S.C. § 1915(e)(2)(b) & 1915A(b)(1).  Specifically, the State of Hawaii and damages

claims against Defendants in their official capacities are DISMISSED with prejudice.  All other claims and Defendants are DISMISSED without prejudice.

(2)  Plaintiff is GRANTED leave to file a proposed amended complaint curing the deficiencies noted above on or before **April 11, 2012**.  Failure to timely amend the Complaint and cure its pleading deficiencies will result in **AUTOMATIC DISMISSAL** of this action for failure to state a claim, and may be counted as strike pursuant to 28 U.S.C. § 1915(g).

(3)  The Clerk of Court is directed to mail a form prisoner civil rights complaint to Plaintiff so that he may comply with the directions in this Order.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, March 12, 2012.



_____
David Alan Ezra
United States District Judge

*Cornelio v. Hirano, et al.,* 1:12-00072 DAE-RLP, Order Dismissing Complaint With Leave Granted to Amend; psa/Screening/dmp/2012/ Cornelio 12-72 dae (dsm ftsc R8 lv amd)

23