IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WILLIAM A. CORNELIO, III, #A0192661, | ) ) ) | CIV. NO. 12-00072 DAE/RLP |
| Plaintiff, | ) ) ) | ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE GRANTED TO AMEND |
| vs. | ) ) | |
| JAMES HIRANO, JOHN DOES 1-7, JANE DOES 1-3, STATE OF HAWAII, | ) ) ) ) | |
| Defendants. | ) ) ) | |

## ORDER DISMISSING FIRST AMENDED COMPLAINT
## WITH LEAVE GRANTED TO AMEND

On March 12, 2012, *pro se* Plaintiff William A. Cornelio, III's original prisoner civil rights complaint was dismissed with leave granted to amend. ECF #9. Before the court is Plaintiff's first amended complaint ("FAC"). ECF #10. Plaintiff complains of actions that occurred while he was housed at the Maui Community Correctional Center ("MCCC"). The FAC names MCCC Warden James Hirano, Lieutenant Fujimoto, Lieutenant John Doe #2, Sergeant Caravalho, Adult Correctional Officer ("ACO") Pinto, and ACO Jane Doe #1 (collectively, "Defendants"),[1] in their individual capacities. Plaintiff claims that Defendants violated his constitutional rights to due process while he was incarcerated at MCCC.

---

[1] Although Plaintiff names all Defendants except Hirano as John or Jane Doe, he identifies Fujimoto, Caravalho, and Pinto by their last names and titles. The court therefore refers to them as identified by Plaintiff.

The FAC is DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915(A)(b)(1), for failure to state a claim. Plaintiff is again granted leave to amend as discussed below.

## I. STATUTORY SCREENING

The court is required to screen all civil actions brought by prisoners that seek redress from a governmental entity, officer, or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint in full or in part if its claims are legally frivolous or malicious, fail to state a claim on which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A(b); 42 U.S.C. § 1997e (c)(1).

A complaint may be dismissed for failure to state a claim for (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, ----, 129 S. Ct. 1937, 1949 (2009).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 1951.

The court must construe a *pro se* complaint liberally, accept all allegations of material fact as true, and construe those facts in the light most favorable to the plaintiff. *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000). Leave to amend should be granted if it appears at all possible that the plaintiff can correct the defects of his or her complaint. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

## II.   <u>BACKGROUND AND CLAIMS</u>

On December 6, 2011, Defendant ACO Jane Doe charged Plaintiff with misconduct at MCCC for unauthorized contact with another prisoner, Ashley Akana.  Plaintiff was given notice of the charges and a hearing was scheduled for December 15, 2011. At the hearing, Plaintiff requested to call ACO Jane Doe as a witness, because her report allegedly stated that she did not actually see Plaintiff speaking with Akana.  The Adjustment Committee, including Defendants Fujimoto and Caravalho, denied Plaintiff's request.  Plaintiff claims that Akana admitted that *she* initiated the contact with Plaintiff, because "she liked him."  ECF #10, FAC at 7.  On December 16, 2011, Fujimoto and Caravalho found Plaintiff guilty, served him with a written report of their findings, and sanctioned him with fourteen days loss of privileges.  Plaintiff appealed this decision through the prison grievance process and Warden Hirano denied his appeal.

Plaintiff next broadly alleges that, on December 31, 2011, "defendants" housed Ashley Akana's husband, inmate Noah Borgman, with Plaintiff in Module-A, to provoke a confrontation between them.  *See* FAC at 8.  Plaintiff identifies Lieutenant John Doe #2 as responsible for housing Plaintiff in Module-A, but does not specify who made the decision to put Borgman in the same Module.  *Id.* at 3.  Plaintiff claims that, after Defendant ACO Pinto "abandoned his post," Borgman assaulted Plaintiff without

4

provocation. FAC at 8. Plaintiff says he reacted by putting his hands in the air and backing out of the recreation area into the multi-purpose area, where Pinto was located. Plaintiff says that Pinto, seeing this, ran past him and tackled Borgman, stopping the altercation. Pinto charged Plaintiff with fighting; it is unclear if Pinto similarly charged Borgman. Plaintiff was given notice of the charges on January 1, 2012, and a hearing was held the next day, January 2, 2012. Plaintiff says he again requested witnesses, but was denied. Fujimoto and Caravalho found Plaintiff guilty and sanctioned him to thirty days in segregation. Plaintiff grieved this decision, and Warden Hirano denied the grievance.

Plaintiff alleges that, because of these two misconduct reports, his work furlough program was cancelled, delaying his anticipated early release. Plaintiff alleges that Defendants' conduct violated his rights to due process. He seeks expungement of the misconduct reports, restoration of all privileges, damages, and declaratory judgment.

## III. **DISCUSSION**

"To sustain an action under section 1983, a plaintiff must show '(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right.'" *Hydrick v. Hunter*, 500 F.3d 978, 987 (9th Cir. 2007)

(citation omitted), *vacated and remanded on other grounds*, 129 S. Ct. 2431 (2009); *see also West v. Atkins*, 487 U.S. 42, 48 (1988); 42 U.S.C. § 1983.

## A.    Due Process

The Due Process Clause protects prisoners from the deprivation of liberty without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). To state a due process claim, a plaintiff must first establish the existence of a liberty interest. Liberty interests arise from the Due Process Clause itself or from state law. *Hewitt v. Helms*, 459 U.S. 460, 466-68 (1983). Inmates' liberty interests are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (internal citations omitted). "As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and does not otherwise violate the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Montanye v. Haymes*, 427 U.S. 236, 242 (1976).

Thus, a prisoner may challenge a disciplinary action that (1) deprives or restrains a liberty interest in some "unexpected manner," directly under the Due Process Clause, or (2) "imposes some 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (citing *Sandin*, 515 U.S. at 483-84)).

### 1.   No Violation Under the Due Process Clause

As the court informed Plaintiff when his original complaint was dismissed, he has no constitutional right to participate in a work furlough program. *See Toussaint v. McCarthy*, 801 F.2d 1080, 1094-95 (9th Cir. 1986) (holding that, under the pre-*Sandin* mandatory language framework, inmates have no constitutional right to participate in prison work programs); *Baumann v. Ariz. Dep't of Corr.*, 754 F.2d 841, 846 (9th Cir. 1985); *cf., Coakley v. Murphy*, 884 F.2d 1218, 1221 (9th Cir. 1989) (no liberty interest based on a transfer from work release center back to prison).  Nor does he have a right to early release.  *See Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7-11 (1979); *see also Neal v. Shimoda*, 905 F. Supp. 813, 818 (D. Haw. 1995), *aff'd in part rev'd in part*, 131 F.3d 818 (9th Cir. 1997) (no state created liberty interest in Hawaii to early release).

Nor does placement in segregated housing, in and of itself, implicate a protected liberty interest. *See Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003); *Hewitt*, 459 U.S. at 466-68 (holding that the Due Process Clause does not confer a liberty interest in being confined in the general prison population).  This is because placement in segregation falls within the terms of confinement ordinarily contemplated when a prison sentence is imposed, and so normally "comport[s] with the prison's discretionary authority." *Toussaint*, 801 at 1091-92.

Thus, neither Plaintiff's fourteen-day loss of privileges, his removal from MCCC's work furlough program, and consequent ineligibility for early release on parole, nor his thirty-day term in segregation extended his confinement in an unexpected manner.  Plaintiff is therefore not entitled to protections under the Due Process Clause itself.

### 2.   *No Apparent State-created Liberty Interest*

Plaintiff alleges that Defendants violated the prison's internal regulations when they conducted the disciplinary hearings, placing his claims squarely within *Sandin*'s ambit. *See Carver v. Lehman*, 558 F.3d 869, 873 n.5 (9th Cir. 2009) (stating "*Sandin*'s holding was limited to 'the . . . question of when due process liberty interests are created by internal prison regulations.'") (quoting *McQuillion v. Duncan*, 306 F.3d 895, 902-903 (9th Cir. 2002)).  Plaintiff must therefore show that his

8

punishments imposed atypical and significant hardship compared to the ordinary incidents of prison life. *Sandin*, 515 U.S. at 483–84.  To determine whether they did so, the court considers: (1) the conditions of confinement in segregation; (2) the duration of the condition and the degree of restraint imposed; and (3) whether the sanction will affect the duration of the prisoner's sentence. *Ramirez*, 334 F.3d at 861; *Keenan v. Hall*, 83 F.3d 1083, 1088–89 (9th Cir. 1996).  "Atypicality" requires not merely an empirical comparison, but turns on the importance of the right taken away from the prisoner. *See Carlo v. City of Chino*, 105 F.3d 493, 499 (9th Cir. 1997).

First, Plaintiff appears to argue that, because he is no longer entitled to early release on parole, his sentence has, in effect, been extended.  This argument is foreclosed as discussed above, because Plaintiff has no right to early release on parole.  Plaintiff does not argue that his *original term of incarceration* has been extended.

Second, Plaintiff's fourteen-day loss of unspecified privileges after the first disciplinary hearing did not include segregation.  Plaintiff provides no facts stating what "privileges" he lost, or showing how that fourteen-day loss was so severe that it represents atypical and significant hardship.

Third, as the court informed Plaintiff when it dismissed the original complaint, it is unlikely that his thirty-

day segregation at MCCC, a medium to low security jail facility, imposed more severe conditions than segregation at HCF, Hawaii's maximum security prison, where the Supreme Court held that thirty days disciplinary segregation, which mirrored administrative segregation, did not impose atypical or significant hardship. *See Sandin*, 515 U.S. at 472, 484; *see e.g., Torres v. Fauver*, 292 F.3d 141, 151 (3d Cir. 2002) (four months in segregation is not atypical and significant); *Griffin v. Vaughn*, 112 F.3d 703, 706-08 (3d Cir. 1997) (fifteen months segregation is not atypical and significant); *Beverati v. Smith*, 120 F.3d 500, 504 (4th Cir. 1997) (six months of confinement in especially disgusting conditions that were "more burdensome than those imposed on the general prison population were not atypical . . . in relation to the ordinary incidents of prison life."); *Jones v. Baker*, 155 F.3d 810 (6th Cir. 1998) (two years in administrative segregation is not atypical and significant); *Jacks v. Crabtree*, 114 F.3d 983 (9th Cir. 1997) (denial of year sentence reduction is not an atypical and significant hardship).

Significantly, although given leave to amend to do so, Plaintiff *still* provides no facts that support a finding of atypical or significant hardship in relation to the ordinary incidents of prison life that resulted from the discipline he received.  Under *Sandin*, a factual comparison must be made between the conditions in general population and/or

10

administrative segregation, and those imposed in disciplinary segregation, "examining the hardship caused by the prisoner's challenged action in relation to the basic conditions of life as a prisoner." *Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir. 2003).   Plaintiff does not discuss the conditions of confinement in MCCC's disciplinary segregation, or compare those conditions to MCCC's general population or its administrative segregation. Plaintiff therefore provides no set of facts suggesting that his confinement in disciplinary segregation or fourteen-day loss of privileges posed an atypical or significant hardship necessitating procedural due process prior to its imposition.

Finally, accepting that there is a state-created liberty interest here, and that Plaintiff was denied witnesses at both disciplinary hearings and advance written notice of the charges at the second hearing, Plaintiff's own recitation of the facts clearly show "some evidence" supporting the Adjustment Committee's finding of guilt, satisfying the requirements of due process.   *See Superintendent v. Hill*, 472 U.S. 445, 455 (1985); *see also Touissaint*, 926 F.2d at 802-03 (9th Cir. 1991); *cf.*, *Burnsworth v. Gunderson*, 179 F.3d 771, 774-74 (9th Cir. 1999) (where there is no evidence of guilt it may be unnecessary to demonstrate existence of liberty interest).   The relevant inquiry is whether "there is any evidence in the record that could support the conclusion reached. . . ." *Hill*, 472 U.S. at 455-56.

As to the first charge, Plaintiff concedes that, although he did not speak to Akana, she spoke to him.  He does not argue that Akana never approached him, or that he was never near her.  There was, therefore, *some* evidence in the record to support the Adjustment Committee's finding that Plaintiff had "unauthorized contact" with Akana when *she* spoke to him, regardless of whether he responded or simply listened to her.

As to the second charge, Plaintiff admits that he and Borgman were involved in an altercation on or about December 31, 2012, and describes that incident in detail.  He concedes that he was previously disciplined for speaking with Borgman's wife.  In his original Complaint Plaintiff alleged that he required medical care after the incident with Borgman.  These facts constitute "some evidence in the record" to support a finding that Plaintiff fought with Borgman, even if the Adjustment Committee disbelieved Plaintiff's self-defense argument.

### 3.   *Transfer to Module-A*

Plaintiff broadly alleges that "[D]efendants knowingly housed inmate Noah Borgman (Ashley Akana's husband) in Module-A with [Plaintiff], with the intentions of seeing a confrontation." FAC at 8.  To the extent that Plaintiff alleges a due process claim against John Doe #2, who Plaintiff claims is responsible for re-housing him in Module-A after his first disciplinary sanctions, he fails to state a claim.  Plaintiff suggests that

12

this housing reassignment was improper because Module-A is for medium security inmates and Plaintiff alleges that he was a community custody inmate.  FAC at 3.  Of course, after having been disciplined, Plaintiff may not have qualified as "community custody."  More importantly, this housing assignment, in and of itself, did not violate Plaintiff's constitutional rights to due process.  Prisoners have no constitutionally protected liberty interest in their classification status.  *See Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Frost v. Agnos*, 152 F.3d 1124, 1130 (9th Cir. 1998).  Prisoners also possess no protected liberty interest in avoiding transfer to another prison, *see Olim v. Wakinekona*, 461 U.S. 238, 245 (1983), or in transfer to a more restrictive section of a facility, *Grayson v. Rison*, 945 F.2d 1064, 1067 (9th Cir. 1991).  Nor do prisoners have a liberty or property interest in work or vocational programs, thus, in community custody status.  *Gibson v. McEvers*, 631 F.2d 95, 98 (1980); see also Baumann v, Arizona Dep't of Corr., 754 F.2d 841, 844 (9th Cir. 1985).

Because Plaintiff fails to state a claim for the deprivation of due process his claims are again DISMISSED. Plaintiff may, however, be able to provide facts showing that he was subject to atypical and significant hardship in relation to the daily incidents of prison life at MCCC, and is again given leave to amend.

## B.   Claims Against Warden Hirano Are Dismissed

Plaintiff alleges that Warden Hirano violated his right to due process when he denied Plaintiff's grievances and upheld the Adjustment Committee's findings of guilt.  As the court held when dismissing Plaintiff's original Complaint, this allegation fails to state a claim, whether it is directed at Hirano, as it is in the FAC, or at Rabanes, as it was in the original Complaint.  "Ruling against a prisoner on an administrative complaint does not cause or contribute to the [underlying] violation."  *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) (holding that only persons who cause or participate in civil rights violations can be held responsible); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (holding that prison officials whose only roles involved the denial of the prisoner's administrative grievances cannot be held liable under § 1983); *Wright v. Shapirshteyn*, No. CV 1-06-0927-MHM, 2009 WL 361951, *3 (E.D. Cal. Feb.12, 2009) (noting that "where a defendant's only involvement in the allegedly unconstitutional conduct is the denial of administrative grievances, the failure to intervene on a prisoner's behalf to remedy alleged unconstitutional behavior does not amount to active unconstitutional behavior for purposes of § 1983"); *Velasquez v. Barrios*, No. 07cv1130-LAB (CAB), 2008 WL 4078766, *11 (S.D. Cal. Aug. 29, 2008) ("An official's involvement in reviewing a prisoner's grievances is an

14

insufficient basis for relief through a civil rights action."). Accordingly, Plaintiff's allegations are insufficient to state a claim against Hirano for denying his grievances.

Plaintiff also seeks to impose liability on Hirano because, as the Warden and final arbiter of Plaintiff's grievances, he became aware of the alleged infirmities in the disciplinary process and did nothing to correct them. This awareness of a problem after the fact, however, does not subject Hirano to liability. "A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011), (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)); *see also Iqbal*, 129 S. Ct. at 1948. Thus, a supervisor is liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

The Supreme Court has rejected the notion that a supervisory defendant can be liable based on knowledge and acquiescence in a subordinate's unconstitutional conduct because government officials, regardless of their title, can only be held liable under § 1983 for his or her own conduct and not the

15

conduct of others.  *See Iqbal*, 129 S. Ct. at 1949.  Supervisors

are therefore not subject to vicarious liability under a theory

of *respondeat superior*, but are liable only for their own

conduct.  *Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir. 2001).

Accordingly, Plaintiff's claims against Warden Hirano are

DISMISSED with prejudice.

## C.   Suggested Eighth Amendment Claims

Plaintiff explicitly limits the FAC to allegations of

due process violations; he does not assert an Eighth Amendment

violation.  *See* FAC at 6, Cause of Action ("The conduct of both

of Plaintiffs [sic] disciplinary hearings by defendants Fujimoto

and Caravalho Denied Him the Due Process of Law").  Nonetheless,

Plaintiff's recitation of facts suggests that he is also making

an Eighth Amendment claim.  For instance, Plaintiff claims that

Defendants purposely housed him in Module-A to provoke a

confrontation between Borgman and him.  Plaintiff also says ACO

Pinto "abandoned his post" before the altercation between Borgman

and Plaintiff, suggesting Pinto failed to protect Plaintiff from

an assault.  Plaintiff undercuts this allegation somewhat,

however, when he states that Pinto was immediately nearby when

the altercation occurred and rushed past Plaintiff to tackle

Borgman and end the fight.  *Id.*

Prison officials are required to take reasonable

measures to guarantee the safety of inmates and have a duty to

protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994); *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998).  To state a claim for threats to safety, an inmate must allege facts to support that he was incarcerated under conditions posing a substantial risk of harm and that prison officials were "deliberately indifferent" to his safety.  *Farmer*, 511 U.S. at 834; Frost, 152 F.3d at 1128; *Redman v. County of Los Angeles*, 942 F.2d 1435, 1443 (9th Cir. 1991) (*en banc*).

To state a failure to protect claim, a plaintiff must set forth facts supporting an inference that defendants knew of, but disregarded, an excessive risk to an inmate's safety. *Farmer*, 511 U.S. at 837.  That is, "the official must both [have been] aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he must also [have] draw[n] the inference." *Farmer*, 511 U.S. at 837; *Frost*, 152 F.3d at 1128; *Redman*, 942 F.2d at 1442.  Plaintiff alleges facts that support an inference that *someone* was deliberately indifferent to threats to his safety by housing him with Borgman. It is not clear that John Doe #2 is that individual, however, because Plaintiff sets forth no facts showing that John Doe #2 knew that Plaintiff's previous discipline was connected to Borgman, and consciously chose to disregard this information when

he made the housing assignment.  Plaintiff's conclusory allegation does not make it so.  *See Iqbal*, 129 S. Ct. at 1949.

Similarly, Plaintiff's allegations against ACO Pinto, i.e., that Pinto abandoned his post, may state a claim that Pinto was deliberately indifferent to Plaintiff's safety, but this allegation is significantly undercut by Plaintiff's later statement that Pinto was in the area adjoining the recreation yard, where the altercation took place, and immediately rushed to Plaintiff's aid when he saw what was happening.  These facts do not show that Pinto failed to prevent the fight or was otherwise deliberately indifferent to Plaintiff's safety.  More importantly, Plaintiff does not allege an Eighth Amendment violation against Pinto, but focuses on his allegation that Pinto charged him with fighting, thereby allegedly denying him due process.  *See* FAC at 8.  As such, Plaintiff fails to state an Eighth Amendment claim.

## IV.  <u>LEAVE TO AMEND</u>

The FAC is DISMISSED as discussed above.  Plaintiff may file a proposed second amended complaint on or before **May 5, 2012**.  The proposed second amended complaint must cure the deficiencies noted above and demonstrate how the conditions complained of resulted in a deprivation of his federal constitutional or statutory rights.

18

When amending the FAC, Plaintiff is **DIRECTED** to use the court's approved prisoner civil rights complaint form, as required by Local Rule LR99.7.10(a).  Plaintiff was sent a copy of this form when the court dismissed the original complaint, the Clerk will send him another copy with this order, and these forms are available at the prison law library.  The court may strike the second amended complaint if Plaintiff fails to conform to this rule.

The court will not refer to the original or first amended complaint to make the second amended complaint complete. Local Rule 10.3 requires that an amended complaint be complete in itself without reference to any prior pleading.  Defendants not named and claims not realleged in an amended complaint are deemed waived.  *See King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987). Furthermore, as a general rule, an amended complaint supersedes the original complaint.  *See Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967).  In an amended complaint, each claim and the involvement of each Defendant must be sufficiently alleged.

### V.   <u>28 U.S.C. § 1915(g)</u>

If Plaintiff fails to file a second amended complaint correcting the deficiencies identified in this Order, this dismissal may count as a "strike" under the "3-strikes" provision of 28 U.S.C. § 1915(g).  Under the 3-strikes provision, a

prisoner may not bring a civil action or appeal a civil judgment

*in forma pauperis* under 28 U.S.C. § 1915

> if the prisoner has, on 3 or more prior occasions,
> while incarcerated or detained in any facility,
> brought an action or appeal in a court of the
> United States that was dismissed on the grounds
> that it is frivolous, malicious, or fails to state
> a claim upon which relief may be granted, unless
> the prisoner is under imminent danger of serious
> physical injury.

28 U.S.C. § 1915(g).

## VI.  CONCLUSION

IT IS HEREBY ORDERED that:

(1)  The First Amended Complaint is DISMISSED for

failure to state a claim, as discussed above.  *See* 28 U.S.C.

§ 1915(e)(2)(b) & 1915A(b)(1).  Specifically, claims against

Warden Hirano are DISMISSED with prejudice.  All other

claims and Defendants are DISMISSED without prejudice.

(2)  Plaintiff is GRANTED leave to file a proposed

second amended complaint curing the deficiencies noted above

on or before **May 5, 2012**.  Failure to timely amend the

Complaint and cure its pleading deficiencies will result in

**AUTOMATIC DISMISSAL** of this action for failure to state a

claim, and may be counted as strike pursuant to 28 U.S.C.

§ 1915(g).

(3)   The Clerk of Court is directed to mail a form prisoner civil rights complaint to Plaintiff so that he may comply with the directions in this Order.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 5, 2012.



_____
David Alan Ezra
United States District Judge

_Cornelio v. Hirano, et al._, 1:12-00072 DAE-RLP, Order Dismissing First Amended Complaint With Leave Granted to Amend; psa/Screening/dmp/2012/ Cornelio 12-72 dae (dsm FAC)