IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WILLIAM CORNELIO III, #A0192661, | ) ) ) | Civ. NO. 12-00072 LEK/RLP |
| Plaintiff, | ) ) | ORDER GRANTING MOTION TO DISMISS FIFTH AMENDED |
| vs. | ) ) | COMPLAINT |
| JAMES HIRANO, DEBORAH TAYLOR; JOHN DOE, | ) ) ) ) | |
| Defendants. | )) | |

**ORDER GRANTING MOTION TO DISMISS FIFTH AMENDED COMPLAINT**

Before the court is Defendants James Hirano's and Deborah Taylor's Motion to Dismiss Fifth Amended Complaint for Plaintiff William Cornelio III's failure to exhaust his available administrative remedies. ECF No. 58. Plaintiff has filed an Opposition to the Motion. *See* ECF No. 61. Defendants have filed their Reply. ECF No. 62. Because it is clear that Plaintiff failed to exhaust his administrative remedies for his claims before commencing this action, Defendants' Motion is GRANTED pursuant to 42 U.S.C. § 1997e(a).

**I. 42 U.S.C § 1997(e)**

"The Prison Litigation Reform Act ["PLRA"] requires that a prisoner exhaust available administrative remedies before bringing a federal action concerning prison conditions." *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009) (citing 42 U.S.C. § 1997e(a)); *Brown v. Valoff*, 422 F.3d 926, 934 (9th Cir. 2005)

(quoting *Porter v. Nussle*, 534 U.S. 516, 525 n.4 (2002)). "'[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" *Bennett v. King*, 293 F.3d 1096, 1098 (9th Cir. 2002) (quoting *Porter*, 534 U.S. at 532). Exhaustion is mandatory, and "unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007); *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002) (*per curiam*). Even if the prisoner seeks monetary or other relief that is unavailable through the grievance system in question, the prisoner must still exhaust all available administrative remedies. *See Booth v. Churner*, 532 U.S. 731, 741 (2001) ("[W]e think that Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures.").

Section 1997e(a) does not impose a pleading requirement, but rather, provides an affirmative defense under which defendants have the burden of raising and proving the absence of exhaustion. *Jones*, 549 U.S. at 216; *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). In deciding a motion to dismiss for failure to exhaust administrative remedies, the court may look beyond the pleadings and decide disputed issues of fact. *Wyatt*, 315 F.3d at 1119-20. Plaintiff has received notice on how to defend against such a motion. *See* ECF Nos. 55, 59; *Woods v.*

*Carey*, 684 F.3d 934, 936 (9th Cir. 2012).

## II. BACKGROUND

Plaintiff commenced this action on February 3, 2012, alleging that Maui Community Correctional Center ("MCCC") prison officials violated his rights to due process during prison disciplinary hearings and failed to protect him from assault by another inmate, Noah Borgman, in December 2011. *See* Compl., ECF No. 1. The court screened and dismissed Plaintiff's first four pleadings for failure to state a claim under 28 U.S.C. § 1915(e) and § 1915A(a). This action is proceeding on Plaintiff's Fifth Amended Complaint ("FAC"), which was filed on July 29, 2013. ECF No. 56. The FAC waives Plaintiff's due process claims and asserts that MCCC Warden James Hirano, Chief of Security Deborah Taylor, and Adult Correctional Officer ("ACO") John Doe,[1] failed to protect him from the assault by inmate Borgman at MCCC on or about December 31, 2011. *See* FAC, ECF NO. 46.

The FAC alleges: (1) Plaintiff has been a protective custody inmate since 1995; (2) on August 4, 2011, Plaintiff was transferred from Arizona to MCCC to participate in a work furlough program; (3) Hirano and Taylor were aware of Plaintiff's protective custody status; (4) Plaintiff was housed in a

---

[1] Plaintiff identified John Doe as MCCC ACO Pinto in earlier complaints and in his request for waiver of service of summons of the Fourth Amended Complaint. He has not identified or served the Doe Defendant with the Fifth Amended Complaint.

community custody unit at MCCC; (5) when this occurred, Hirano told Plaintiff to alert him or other prison officials if there were any problems with this housing placement; (6) Plaintiff did not consent to be reassigned from protective to general custody; (6) on or about December 7, 2011, Plaintiff was placed in a disciplinary unit as a sanction for unauthorized contact with female inmate Ashley Akana;[2] (7) Plaintiff told Hirano he was concerned about this move; (8) Hirano assured Plaintiff that he would be transferred back to community custody status on December 31, 2011; (9) Akana's husband, Noah Borgman was housed in Plaintiff's unit on December 30, 2011; and (10) on December 31, 2011, Borgman attacked Plaintiff during their first recreation period together. *See* Fifth Amended Compl., ECF No 56, PageID #345-47.

### III. **EXHAUSTION PROCEDURES**

The PLRA requires "proper" exhaustion of administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90. This is "because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at

---

[2] Plaintiff originally stated that he was charged with unauthorized contact with Akana on December 5, 2011, and served fourteen days in disciplinary segregation between December *16-31*, 2011. *Compare* Compls., ECF Nos. 1, 18; Third Amended Compl., ECF No. 27.

4

90-91. Requiring prisoners to properly exhaust their claims furthers Congress's goal of "'reduc[ing] the quantity and improv[ing] the quality of prisoner suits.'" *Id.* at 94 (*quoting Porter*, 534 U.S. at 524). Proper exhaustion advances this goal by: (1) "giv[ing] prisoners an effective incentive to make full use of the prison grievance process;" (2) reducing prisoner suits, as some prisoners are "persuaded by the proceedings not to file an action in federal court;" and (3) improving the quality of any remaining prisoner suits "because proper exhaustion often results in the creation of an administrative record that is helpful to the court." *Ngo*, 548 U.S. at 94-95.

**A.  Hawaii's Administrative Exhaustion Procedure**

The Hawaii Department of Public Safety's ("DPS") grievance process is set forth in its Policy and Procedure Manual ("PPM") COR.12.03, which became effective on June 8, 2011. *See* Defs' Ex. A, ECF No. 58-3. To initiate DPS's grievance process, an inmate must first attempt to informally resolve the grievance, then follow a three-step process by submitting a grievance at each step and waiting for a response, or for the time to receive a response to expire, before moving to the next step. *See id.*

An inmate must file a Step 1 grievance within fourteen days of the incident at issue, subject to extensions of time due to legitimate delays (for verified physical incapacity, transit

delays, unavailability of forms).  COR.12.03.8.1.  The grievance is considered filed on the date that it is logged into the prison's Offendertrak system.  COR.12.03.10.1.  Prison officials have twenty working days to respond to any level grievance, with an automatic twenty-working day extension if necessary.  COR.12.03.10.3.  If there is no response after forty (40) working days, this is considered a denial and the inmate may proceed to the next level appeal.  *Id.*

The inmate has five calendar days to file a Step 2 appeal to the Branch/Core Administrator, calculated from the date of receipt of the grievance's denial.  COR.12.03.8.3(c); COR.12.03.10.4.  The Branch/Core Administrator has twenty working days, with an automatic twenty-working day extension, to respond.  *See* COR.12.03.10.3.  The inmate then has five calendar days to file a Step 3 appeal to the Division Administrator.  COR.12.03.10.5.  The Division Administrator has twenty working days, with an automatic twenty working-days extension, to respond.  *See* COR.12.03.10.3-5.  If the Division Administrator fails to respond within forty working days, the grievance is considered exhausted.  COR.12.03.10.6.

To fully comply with PPM Cor.12.03, the inmate must submit only one issue per grievance and acknowledge receipt of a written response before proceeding to the next step.  PPM

COR.12.03.8.3.  Failure to comply with these rules terminates the grievance process for that particular issue.  *See id.*

If the inmate fails to follow proper procedures, the prison's grievance officer may reject and return the grievance or appeal to the inmate without a response.  PPM COR.12.03.9.1.  If a grievance officer procedurally rejects a grievance, however, the officer must provide the inmate with written notice of the procedural rejection and an opportunity to correct and resubmit the grievance or appeal.  *Id.*  If the officer fails to do so, the inmate may appeal that failure.  If, however, the grievance or appeal is ultimately rejected for the inmate's failure to comply with PPM COR.12.03, after the opportunity to correct the issue has been given, the inmate may not appeal that rejection.

## IV. <u>DISCUSSION</u>

### A.  The Parties' Arguments

Defendants state that, although Plaintiff submitted several grievances regarding the events at issue in December 2011, he only properly filed one grievance that relates to his claims that Hirano, Taylor, and ACO Doe allegedly failed to protect him from Borgman's assault: Grievance No. **169112**.  *See* Defs' Ex. B, ECF No. 58-4, PageID #421.  Grievance No. 169112 was filed on or about January 1 and denied on January 20, 2012.  Plaintiff acknowledged receipt on January 22, 2012, but did not appeal this decision.  Defendants state that, although Plaintiff

filed other grievances in which he complained about the disciplinary sanctions imposed on him, those grievances did not properly address Hirano's, Taylor's, or any other MCCC official's failure to protect him from Borgman. Defendants argue that Plaintiff therefore failed to properly exhaust his prison administrative remedies before he commenced this suit, in compliance with the PPM, which governs Hawaii's inmates' grievances and "define[s] the boundaries of proper exhaustion." *See Jones,* 549 U.S. at 218. Defs.' Mem. in Support, ECF No. 146-1.

Plaintiff counters that he grieved his claims in the FAC regarding MCCC officials' deliberate indifference to his safety and failure to protect him from Borgman's alleged assault in Grievance No. **169130**, which he submitted on January 2, 2012. Plaintiff says he exhausted Grievance No. 169130 after it was rejected on January 20 and he filed a Step 3 appeal in Grievance No. **169215** on January 22, 2012. Plaintiff further suggests that, because *all* of his grievances regarding the incidents at MCCC in December 2011, were resolved by April 2012, and he did not file the FAC until July 29, 2013, he fully and timely exhausted his administrative remedies.

## B. Plaintiff's Relevant Grievances

The court has reviewed all of Plaintiff's grievances regarding the incidents at MCCC in December 2011, including those

complaining that (1) he was improperly disciplined for unauthorized contact with inmate Akana; (2) he was unfairly disciplined for fighting with Borgman; and (3) prison officials housed him with Akana's husband, Borgman, with deliberate indifference to his safety. Only three are dated *after* the alleged assault on December 31, 2011, and are relevant to Plaintiff's claims that Hirano, Taylor, and ACO Doe failed to protect him from Borgman:

> **1. Grievance No. 169112/ Step One/ Signed 1/2/2012/Received 1/1/2012[3]**
>
> This grievance relates solely to the December 31, 2011 fight between Plaintiff and Noah Borgman. Plaintiff complains that MCCC officials deliberately housed Borgman with Plaintiff to incite a fight, denied Plaintiff medical care after the fight, and refused to allow Plaintiff to make a police report.
>
> Denied **January 20, 2012**; Plaintiff acknowledged **January 22, 2012, but did not appeal.**
>
> **2. Grievance No. 169130, Step 2; Signed/Received 1/2/2012**
>
> This is marked as a Step 2 Appeal. It refers to Grievance Nos. **169201 and 169202**, submitted earlier to grieve Plaintiff's sanction for unauthorized contact with Akana. Although this appeal refers to the December 31, 2011 assault, stating, "[t]his facility deliberately created a hostile environment for me when they chose to house an inmate who they knew, without any doubt, that he would assault/[?] me without provocation or any knowledge," its stated purpose was to grieve the thirty-day sanction imposed on Plaintiff for fighting with Borgman on December 31, 2011.
>
> Rejected **January 20, 2012**, stating, "This grievance is

---

[3] It is unclear why prison authorities received this grievance the day *after* Plaintiff signed it.

9

a repeat of one already submitted.  Returned: 1/20/12; Answered grievance #169201."

**3. Grievance No. 169215, Step 3: Signed/Received 1/22/2013**

This is a Step 3 Appeal of **Grievance Nos. 169201, 169130.**  It appeals two issues: (1) MCCC officials were deliberately indifferent to Plaintiff's safety by housing Borgman in Plaintiff's unit; and (2) Plaintiff's first disciplinary hearing, regarding sanction for unauthorized contact, was improper.

The MCCC Division Administrator **rejected the issues presented in Grievance Nos. 169201, 1692021, and 169130, March 27, 2012**, including his due process claims regarding the disciplinary hearings and rejecting Plaintiff's version of the fight.  The Resolution stated the administrative remedy regarding Plaintiff's grievances was complete.

See Defs.' Ex. B, ECF 58-4.

**C.  Analysis**

First, because Plaintiff failed to appeal **Grievance No. 169112** on or before January 27, 2012, which explicitly grieved his claims for MCCC officials' alleged failure to protect him, he failed to comply with PPM COR12.03.10.4 and this grievance was unexhausted when he commenced this action on February 3, 2012.

Second, Grievance Nos. **169130** and **169215**, only tangentially refer to the assault, were not submitted to grieve the assault, and contain more than one issue.  See COR.12.03.8.3.  Moreover, Plaintiff failed to wait for a response to Grievance No. 160215 before filling this action.  See COR.12.03.10.  These grievances therefore do not comply with the PPM.  Nonetheless, because prison officials arguably addressed Plaintiff's claims

against Hirano, Taylor, and ACO Doe for failing to protect him from Borgman's alleged assault on March 27, 2012, when they denied his Step 3 appeal in **Grievance No. 169215**, Plaintiff's claims in the FAC were exhausted on or about March 27, 2012, approximate seven weeks after he brought this action to federal court.

Plaintiff argues that, because the FAC was not accepted and filed until July 29, 2013, and he had exhausted all of his administrative remedies long before that date, his claims in the FAC are timely exhausted.  Plaintiff is mistaken.

Prisoners must exhaust available administrative remedies *prior* to filing suit in federal court.  *Jones*, 549 U.S. at 211; *McKinney*, 311 F.3d at 1199–1201 (holding prisoner may not exhaust administrative remedies for claims that are already pending in district court).  Section 1997e(a) mandates that "[n]o action shall be brought . . . until such administrative remedies as are available are exhausted," 42 U.S.C. § 1997e(a), and "requires that a prisoner exhaust administrative remedies before submitting any papers to the federal courts." *Vaden v. Summerhill*, 449 F.3d 1047 (9th Cir. 2006).

The Ninth Circuit has made an exception to this general rule.  In *Rhodes v. Robinson* the court distinguished between the proper dismissal of unexhausted claims raised in an original

11

complaint and the improper dismissal of *new* claims that occurred and were exhausted prior to filing an amended complaint.  621 F.3d 1002 (9th Cir. 2010).  Specifically, the Ninth Circuit held that the PLRA's exhaustion requirement was satisfied with respect to new but related claims asserted in a supplemental pleading that "arose after the initial complaint was filed" if the new claims were exhausted prior to the filing of the supplemental pleading.[4]  *Id.* at 1006–07.

Here, unlike in *Rhodes*, Plaintiff's Fifth Amended Complaint is not a supplemental complaint, because it does not raise new claims based on new conduct that arose after the initial complaint was filed.  Plaintiff's Fifth Amended Complaint was submitted in response to the court's holding that Plaintiff consistently failed to state sufficient facts regarding his alleged "threat to safety claim," and order to clarify his claims in an amended complaint or risk dismissal of the action.  Plaintiff's claims against Defendants Hirano, Taylor, and ACO Doe arose on or before December 31, 2011, at least one week before the initial complaint was filed on February 3, 2012.  Importantly, Plaintiff alleged his "threat to safety" claims in the initial complaint, albeit inadequately.  *See* ECF No. 1,

---

[4] Rule 15(d) provides, in part: "On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."  Fed. R. Civ. P. 15(d).

PageID #9.  Under § 1997e(a), Plaintiff was required to exhaust his administrative remedies for the allegations in his FAC before he filed his initial complaint.  He did not, and Defendants' Motion to Dismiss Fifth Amended Complaint is GRANTED.

### III.  CONCLUSION

    1.  Defendant's Motion to Dismiss Fifth Amended Complaint for Plaintiff's failure to exhaust prison administrative remedies is GRANTED.  Plaintiff's Complaint and action are DISMISSED without prejudice.

    2.  The Clerk of Court SHALL enter judgment and close this case.

    3.   The court certifies, pursuant to 28 U.S.C. § 1915(a)(3) and Federal Rules of Appellate Procedure 24(a)(3)(A), that an appeal of this decision would not be taken in good faith.

      IT IS SO ORDERED.

//

DATED AT HONOLULU, HAWAII, November 6, 2013.



   /S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

*Cornelio v. Hirano, et al.*, 1:12-cv-00072 LEK/RLP; psas/Exh Ords/2013/Cornelio 12-72 lek (grt)